Edward W. McBride, Jr. (8236)
**VIAL FOTHERINGHAM LLP**
515 South 400 East, Suite 200
Salt Lake City, UT 84111
Telephone: (801) 355-9594
Facsimile: (801) 359-1246
Ted.mcbride@vf-law.com
*Attorney for Plaintiffs*

_____

## IN THE UNITED STATES DISTRICT COURT
## IN AND FOR THE STATE OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| ALLEN ANDERSEN, an individual; NXLEVEL NETWORK, LLC, a Utah limited liability company; JESSICA ZIMMERMAN, an individual; ROBERT GURNEY, an individual; AMY HODGSON, an individual; and JOHN DOES 1-99, | **THIRD AMENDED COMPLAINT** <br><br> **JURY TRIAL DEMANDED** |
| Plaintiffs, | |
| Vs. | |
| STATE OF UTAH; UTAH DEPARTMENT OF HEALTH AND HUMAN SERVICES; JEFFREY S. HARRIS, an individual; GERALD GANSEY, an individual; DRAPER CITY; VIVIEN PEARSON, an individual; DAVID BERNAL, an individual; WEST JORDAN CITY; BRETT SU'A, an individual; RIVERDALE CITY; SANDY CITY; and WEST VALLEY CITY, WILLIAM CHOW, an individual; and TUMI YOUNG, an individual. | Magistrate Judge: Paul M. Warner <br><br> Civil No.: 1:16-cv-00005-PMW |
| Defendants. | |

Plaintiffs, by and through counsel, claim, allege and assert for cause of action, as follows:

## PRELIMINARY STATEMENT

Plaintiffs Allen Andersen, NXLevel Network, LLC, and Jessica Zimmerman, own and/or lease sober living homes which provide *only* housing accommodations to many disabled individuals who are former substance abusers. Plaintiffs Robert Gurney and Amy Hodgson are recovering substance abusers and are current residents of the sober living homes. Likewise, Plaintiffs John and Jane Does one through ninety-nine are also similarly situated existing house residents or former House Members.

The sober living homes do *not* provide *any* treatment, supervision, medical or rehabilitation services. The sober living homes are simply an affordable, unsupervised, self-run, and self-sustaining housing option to individuals who desire to live in an alcohol and drug free living environment that supports disabled individuals in long-term recovery from substance abuse. The sober living homes only provide housing accommodations.

On May 12, 2015 the Utah State Legislature amended UCA § 62A-2, which required all "Recovery Residences" to obtain a state license and be subject to substantial regulatory oversight including significant administrative and financial requirements, which are unnecessary and discriminatory being based solely on the status of a targeted disability. Defendants threatened to close the Plaintiffs' federally protected homes if the Plaintiffs do not pay the Defendants State of Utah Department of Human Services ("DHS") an aggregate amount of $10,200.00 in licensing application fees for the six existing sober living homes.

Defendants are also demanding that Plaintiffs make unnecessary and significant modifications to each of the single family homes in order to comply with the State's discriminatory regulations. Plaintiffs estimate the erroneous home modifications will

immediately cost the Plaintiffs over $120,000.00. These initial house modifications and trivial additions, such as installation of enhanced fire suppression systems, additional private bathrooms and private bedrooms for the sole use by the now required professionally licensed live-in staff, installing locking cabinets for dish soap, window cleaner, and even wet-wipes. Modifications also add aspects of commercial kitchens such as additional sinks.

Additionally, the Defendants are coercing the homes to adhere to "special" occupancy and operating additional guidelines. Plaintiffs estimate an additional $165,000.00 each year in added overhead costs to satisfy the State's DHS "special" additional requirements based on a protected disability status, which include: paid onsite supervision, licensed professional staff to provide counseling and case management for all house residents - whether or not such services are wanted or needed by the individual house resident.

The Defendants' demands imposed on the sober living homes at issue include compulsory constraints on each home's freedom of choice by overriding existing proven successful methods of operation.

Defendants openly admit that their "special" added conditions and requirements, including but not limited to the aforementioned, *only* apply to homes that are occupied by the federally protected class of disabled individuals who are in recovery from alcohol and/or drug abuse and such requirements do *not* apply to all single family or similar dwellings. The Defendants constraints and conditions are discriminatory and prohibited under the FHA, ADA, and other federal law.

In March of 2016, the Utah Legislature passed House Bill 259, which amended UCA §
62A-2 by again, altering the definition of "Recovery Residence." Defendants argue that
Plaintiffs' sober living homes are "recovery residences" and thus subject to State licensure.

Because Plaintiffs do *not* have the resources or the ability to adhere to the Statute's
requirements, the sober living homes will be forced to shut down. Consequently, Plaintiffs
Gurney and Hodgson, along with dozens of similarly situated disabled individuals will be
homeless.

In order to skirt the forced homelessness on the sober living homes' residents, Defendants
argue that it will force Plaintiff Andersen to find equitable housing arrangements for all of the
displaced residents. Such assertion is a farce and offensive. In the hearings before this court, the
irrefutable evidence presented proved that there is *no* similar alternative housing arrangement
within the resident's rent range, nor were there even any open occupancies at any of the
Defendants unequal alternatives.

This action challenges the Defendants' authority to require licensing for sober living
homes as the Plaintiffs' rights to provide and live in such housing are protected by federal laws
including: the Federal Fair Housing Act ("FFHA or FHA"), the American's with Disabilities Act
(ADA), Federal Rehabilitation Act, and other federal law.

Plaintiffs seek declaratory and injunctive relief enjoining the Defendants from enforcing
the Defendants' latest version of UCA § 62A-2 *et seq.,* and Utah Administrative Code R501 *et
seq.,* and certain other State, Municipal and/or City Codes/Regulations that unlawfully
discriminate against Plaintiffs and/or have or had a disparate impact or otherwise adversely
affected the Plaintiffs civil rights including: privacy, housing, property, and health information.

Plaintiffs also seek monetary damages, statutory damages and penalties, costs of suit, attorneys' fees, and interest.

## JURISDICTION AND VENUE

1.      This Court has subject matter jurisdiction over this action under 28 U.S.C. §§ 1331 and 1343, 42 U.S.C. § 3613, and 42 U.S.C. § 12133.

2.      Declaratory and injunctive relief is sought pursuant to 28 U.S.C. § 2201, 42 U.S.C. § 3613(c)(1) and 42 U.S.C. § 12133, as well as Rules 57 and 65 of the Federal Rules of Civil Procedure.

3.      Supplemental jurisdiction for all State of Utah claims are proper pursuant to 28 U.S.C. § 1367.

4.      Venue is proper in the United States District Court for the District of Utah as all acts complained of occurred within this District.

## PARTIES

5.      Plaintiff Allen Andersen is an individual residing in Weber County, State of Utah.

6.      Plaintiff NXLevel Network, LLC is a Utah limited liability company with principal offices in Weber County, State of Utah.

7.      Plaintiff Jessica Zimmerman is an individual and owns the residential dwelling at 7077 South 2310 West, West Jordan, Utah. Zimmerman leases their single family home to Plaintiff NXLevel Network, LLC, who acts as the responsible entity of the house lease, maintenance, and financial fiduciary. Zimmerman leased their home with the knowledge it would be used as a sober living home; however, Zimmerman has no involvement in the operations of said home.

8.     Plaintiff Amy Hodgson is an individual, a disabled person as defined under the Fair Housing Act 42 U.S.C. 3601 ("FHA"), and a resident at 7077 South 2310 West, West Jordan, Utah; a sober living home.

9.     Plaintiff Robert Gurney is an individual, a disabled person as defined by the FHA, and a resident at 5282 South 575 West, Riverdale City, Utah; a sober living home.

10.     Defendant Utah Department of Health and Human Services ("DHS") is a division of Defendant State of Utah. One of DHS's primary functions is to exercise and enforce licensure of human services programs within the State of Utah.

11.     Defendant Jeffrey S. Harris is an individual and the Licensing Supervisor for the DHS.

12.     Defendant Gerald Gansey is an individual and a Licensing Specialist at the DHS.

13.     Defendant Draper City is a municipal corporation organized and existing pursuant to the laws of the State of Utah. Draper City is responsible for acts of its officers, agents and employees, and is responsible for the enforcement of its zoning, building and property maintenance codes. The City is a public entity under the Americans with Disabilities Act, 42 U.S.C. 12131 *et seq.*

14.     Defendant Vivien Pearson is an individual and a Business License Official for Draper City.

15.     Defendant David Bernal is an individual and a Code Enforcement Officer for Draper City.

16.     Defendant West Jordan City is a municipal corporation organized and existing pursuant to the laws of the State of Utah. West Jordan City is responsible for acts of its officers,

agents and employees, and is responsible for the enforcement of its zoning and building codes. The City is a public entity under the Americans with Disabilities Act, 42 U.S.C. 12131 *et seq.*

17.     Defendant Brett Su'a is an individual and an Enforcement Official of West Jordan City.

18.     Defendant Riverdale City is a municipal corporation organized and existing pursuant to the laws of the State of Utah. Riverdale City is responsible for acts of its officers, agents and employees, and is responsible for the enforcement of its zone, building and property maintenance codes. The City is a public entity under the Americans with Disabilities Act, 42 U.S.C. 12131 *et seq.*

19.     Defendant Sandy City is a municipal corporation organized and existing pursuant to the laws of the State of Utah. Sandy City is responsible for acts of its officers, agents and employees, and is responsible for the enforcement of its zoning, building and property maintenance codes. The City is a public entity under the Americans with Disabilities Act, 42 U.S.C. 12131 *et seq.*

20.     Defendant West Valley City is a municipal corporation organized and existing pursuant to the laws of the State of Utah. West Valley City is responsible for acts of its officers, agents and employees, and is responsible for the enforcement of its zone, building and property maintenance codes. The City is a public entity under the Americans with Disabilities Act, 42 U.S.C. 12131 *et seq.*

21.     Defendant William Chow is an individual and police officer for the West Valley City Police Department.

22.     Defendant Tumi Young is an individual and a Code Enforcement Officer for West Valley City.

## STATEMENT OF THE CASE

23.     In 1988, Congress amended the Fair Housing Act, 42 U.S.C. § 3601 *et seq.,* to extend the guarantee of fair housing to handicapped or disabled individuals. Congress also authorized the Secretary of the United States Department of Housing and Urban Development to promulgate regulations to implement the Fair Housing Act. 42 U.S.C. § 3614.

24.     Under the Fair Housing Act, the term "handicap" means, with respect to a person, a "physical or mental impairment which substantially limits one or more of such person's major life activities, a record of such an impairment, or being regarded as having such an impairment" 42 U.S.C. § 3602(h). The term "physical or mental impairment" includes "alcoholism" and "drug addiction" (other than addiction caused by current, illegal use of a controlled substance)." 24 C.F.R. § 100.201.

25.     Under the Fair Housing Act, it is unlawful to discriminate against or otherwise make unavailable or deny a dwelling to any buyer or renter because of a handicap [disability] of that buyer, renter, or person residing in or intending to reside in that dwelling after it is sold, rented, or made available. 42 U.S.C. § 3604(f)(1).

26.     The Fair Housing Act further provides that it is unlawful to discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of a handicap of that person or persons residing in or intending to reside in that dwelling after it is sold, rented, or made available. 42 U.S.C. § 3604(f)(2).

27.     The federal regulations implementing the Fair Housing Act further make it unlawful because of a handicap [disability], "to restrict or attempt to restrict the choices of a person by word or conduct in connection with seeking, negotiating for, buying or renting a dwelling so as to discourage or obstruct choices in a community, neighborhood or development." 24 C.F.R. § 100.70(a).

28.     The Americans with Disabilities Act requires that no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, program, or activities of a public entity, or be subjected to discrimination by any such entity. 42 U.S.C. § 12132.

29.     The federal regulations implementing the amendments to Americans with Disabilities Act prohibit any public entity from administering a licensing program in a manner that subjects individuals with disabilities to discrimination, disparate impact, or additional regulations, rules and requirement, or any conditions that are not placed on *all* persons living in similar houses.

30.     The FHA and ADA prohibit the establishment and enforcement of regulations and requirements on the basis of any disability, nor may a public entity establish requirements for housing accommodations, programs or activities of licensees that subject individuals with disabilities to discrimination on the basis of disability. 28 C.F.R. § 35.130(6).

31.     The federal regulations implementing the Americans with Disabilities Act make it unlawful for a public entity, in determining the site or location of a home or facility, to make selections that have the purpose or effect of excluding individuals with disabilities from, denying them the benefits of, or otherwise subjecting them to discrimination or disparate impact, and

required public entities to provide reasonable accommodations to disabled individuals. 28 C.F.R.

§ 35.130(4)(I).

32.     Plaintiffs Andersen and NXLevel Network LLC own and/or lease six (6)

residences that are utilized as "sober living homes" in Utah, which Plaintiff Andersen has helped

establish. The six (6) sober living homes are located at the following addresses:

> a.  5282 South 575 West, Riverdale City, Weber County, Utah. Established in
> November 2013 with an occupancy capacity for 9 males;
> b.  4082 West Mann Way, West Valley City, Salt Lake County, Utah. Established in
> September 2014 with an occupancy capacity for 9 males;
> c.  4078 West Mann Way, West Valley City, Salt Lake County, Utah. Established in
> September 2015 with an occupancy capacity for 9 males;
> d.  7077 South 2310 West, West Jordan, Salt Lake County, Utah. Established in
> February 2015, with an occupancy capacity for 14 females. This home is owned by Plaintiff
> Zimmerman;
> e.  10524 South Golden Willow Dr., Sandy, Salt Lake County, Utah. Established in
> December 2015 with an occupancy capacity for 14 males; and
> f.  138 East 10600 South, Sandy, Salt Lake County, Utah. Established in December
> 2015.

33.     Plaintiffs Andersen and NXLevel Network LLC also leased two (2) residences

which were utilized as "sober living homes" in Utah, which Plaintiff Andersen helped establish,

but were forced to close due to Defendants' discrimination, disparate treatment, and interference.

The two (2) sober living homes were located at the following addresses:

> a.  11432 South Cranberry Hill Court, Draper City, Salt Lake County, Utah.
> Established in September 2015, with an occupancy capacity for 12 males; and
> b.  1664 East 11245 South, Sandy City, Salt Lake County, Utah. Established in
> October 2015, with an occupancy capacity for 12 females.

34.     One of the purposes of the sober living homes is to provide a cost-effective means

of providing a supportive, open-ended, alcohol and drug-free living environment for recovering

individuals. These six (6) homes at issue in this case *only* provide housing accommodations. The

individuals who reside in the homes are in long-term recovery from alcohol or drug abuse, and many have completed formal substance abuse treatment from professionally licensed facilities.

35.     Plaintiffs Allen Andersen and NXLevel Network, LLC merely assist in operating six sober living homes as prescribed by the Federal Fair Housing Act, as Amended, and the Federal Anti-Drug Abuse Act of 1988 (the "Acts"). The "Oxford House" model and the Plaintiffs' sober living homes are patterned after the guidelines in these Acts. Factually and legally, there is no difference between the Plaintiffs' homes, and the homes operated by an Oxford House. In fact, there are an estimated 3,500 Sober Living Homes, Oxford Houses, or similarly structured group homes for disabled individuals who are in recovery from alcohol or drug abuse presently operating throughout the United States.

36.     Plaintiffs Andersen and NXLevel Network, LLC merely assist in the establishment of affordable housing for individuals in long-term recovery from substance abuse and/or alcoholism.

37.     The residents accepted into the sober living homes are required to follow three rules as required by federal mandate and the Anti-Drug Abuse Act: (1) be financially self-supported; (2) have democratic operations; and (3) immediately expel anyone who relapses or returns to using drug and/or alcohol.

38.     Plaintiff Andersen merely assists the sober living homes with technical/operational assistance to ensure each home stays in compliance with the federal mandated guidelines of the Anti-Drug Abuse Act, FHA, and ADA. Plaintiff Andersen's assistance helps to ensure the long-term viability and self-sustainability of each of the homes,

which is prescribed and highly encouraged under the aforementioned federal guidelines and federal acts.

39.     Like Oxford House, Inc., Plaintiff Andersen and NXLevel Network, LLC assist the sober living homes ensure financial sustainability, adequate occupancy, and operational consistency. Plaintiffs Andersen and NXLevel Network, LLC do *not* provide any services. Even if it were determined that Plaintiffs Andersen and NXLevel provided limited services, such services are not above those services provided by an Oxford House.

40.     The sober living homes are affordable, unsupervised, self-run, self-sustaining homes.  They are simply an alcohol and drug free living environment. They provide an opportunity for recovering disabled individuals to live as a family unit focused on sustaining a lifestyle free of alcohol and drug use.

41.     Sober living homes have statistically proven to maintain abstinence from alcohol and drug use by house residents, who are in long-term recovery.

42.     Each of the six sober living homes functions separately from one another. Each individual home provides *only* housing accommodations for its residents, who are democratically accepted as House Members.

43.     There are no services provided to or by the home residents that may legitimately necessitate professional healthcare licensing or regulatory oversight.

44.     Current sober living home residents must approve new house members by vote.

45.     Each house member may also be "voted out" for non-compliance with house rules.

46.     Each resident of the six (6) sober living homes is a disabled person, who is in recovery, as defined by 42 U.S.C. *et seq.* Each resident is a member of a federally protected class and entitled to federal statutory protections.

47.     UCA 62A-2-101 *et seq*. treats Plaintiffs differently based only on their disability status, resulting in additional administrative and financial burdens, which are not applicable to other living arrangements, and thus violates the FHA and ADA.

48.     Under UCA § 62A-2-108, the State of Utah requires licensure of any person or entity that establishes, conducts, or maintains a "human services program." For the past several years, and after federal investigation, the DOJ and HUD have maintained their determination that Plaintiffs' homes are *not* "human services programs," nor are they subject to additional regulations which are not applicable to all Utah families.

49.     On May 12, 2015, the Utah State legislature amended UCA 62A in its 2015 legislative session.

50.     Under the amended UCA § 62A-2-101(18)(a), a "human services program" includes the newly created and defined "Recovery Residence."

51.     Under UCA 62A-2-101(24), a recovery residence "means a home or facility, other than a residential treatment or residential support program, that meets at least two of the following requirements:

> (a) provides a supervised environment for individuals recovering from a substance abuse disorder;
> (b) requires more than half of the individuals to be recovering from a substance abuse disorder;
> (c) provides or arranges for residents to receive services related to their recovery from substance abuse disorder, either on or off site;
> (d) holds the home or facility out as being a recovery residence;
> (e) (i) receives public funding; or (ii) runs the home or facility as a commercial

13

venture for financial gain.

52.     Utah's stated purpose for these regulations as stated in UCA § 62A-2-102, is "to permit or authorize a public or private agency to provide defined human services programs."

53.     Despite the fact that the subject sober living homes only provide federally protected housing, under the Utah Administrative Code, Rule R501-18, the State of Utah has imposed that recovery residences must provide basic health and safety standards including significant administration staffing and other added financial requirements.

54.     Rule R501-1-4 and 501-18-4 subjects a recovery residence to an initial licensing fee of $1,700 per home, a separate renewal license fees, plus any other applicable fees.

55.     Rule R501-18-5 requires a recovery residence to ensure that clients receive supporting services.

56.     Rule 501-18-6 requires staffing of the residence including staff-to-client ratios.

57.     Rule 501-18-7 requires a recovery residence to provide client records to the State, including an "intake application" and documentation of supportive services not directly associated with the recovery residence.

58.     Rule 501-18-7(k) states that "treatment is not a required component of a recovery residence."

59.     Rule 501-18-9 sets forth specific requirements for accommodations including locking bathrooms, minimum sleeping space, sources of light, minimum dining space and how each "client" may decorate his or her room. This rule further requires a landlord to be responsible for furniture and residence equipment and the cleanliness and safety of the dwelling.

60.     Rule 501-18-11 sets limitations and medical standards on who may inhabit a recovery residence and where prescription and non-prescription medications must be kept.

61.     UCA § 62A-2 and Utah Administrative Code Rule 501 are mere pretexts to over-regulate and oversee rental housing to individuals with certain types of disabilities – addiction to alcohol or drugs.

62.     The new Utah law also imposes additional safety requirements that are more stringent than safety requirements applied to other single-family residences. The ordinance makes no effort to tailor the safety requirements to the particular disabilities of plaintiff's residents, which violates the federal acts.

63.     The requirements imposed by UCA 62A-2 facially discriminate against disabled persons and also render the sober living homes economically unfeasible and operationally impractical.

64.     The requirements imposed by 62A-2 mandate significant additional financial burdens that will force the sober living homes to shut down.

65.     Upon information and belief, each Defendant municipality where the sober living homes are located, have enforced, threatened to enforce, or are likely to enforce the requirements imposed by 62A-2 and/or their own unlawful municipal codes.

66.     Plaintiffs Gurney and Hodgson currently rent their rooms for $400 and $450/month respectively.

67.     The shutdown of the sober living homes would force Plaintiffs Gurney and Hodgson to vacate the sober living homes rendering them homeless.

**Draper City Enforcement Proceedings**

68.     Upon information and belief, on November 12, 2015, Draper City Licensing Supervisor Vivien Pearson and Draper City Code Enforcement Officer David Bernal searched the 11432 South Cranberry Hill Court, Draper City sober living home and interrogated the home's residents, threatening to close the home.

69.     On November 18, 2015, Defendant David Bernal of Draper City issued a "Notice of Violation" against Plaintiffs Andersen and NXLevel Network, LLC for a violation of the sober living home for failure to have a business license. In order to qualify for said business license in Draper City, the Plaintiffs would need to fully comply with UCA §62A-2.

70.     On March 10, 2015, and again on November 20, 2015, Plaintiff Andersen, on behalf of all Plaintiffs, provided a formal request for "Reasonable Accommodation" to the DHS for the sober living homes. Plaintiffs alleged in their request that they be allowed to continue to operate and have the equal opportunity to use and enjoy the dwelling by its residents.

71.     These sober living homes are "single family residences."

72.     As occupants of single family residences, Plaintiffs must be allowed a reasonable accommodation for the uninterrupted operation and occupancy of the dwellings under the FHA.

73.     On December 1, 2015, Plaintiff Andersen received a second notice of citation from Vivien Pearson, Business License Official of Draper City, for conducting a business without a business license.

74.     On December 17, 2015, Plaintiff Andersen received a response from Debbie Kurzban, an Assistant Attorney General for the State of Utah, regarding his formal request for "Reasonable Accommodations" asserting the following: the State is simply trying to protect the

safety of the individuals who rent from Plaintiff; the sober living homes meet the new State of

Utah's definition of a "Recovery Residence"; and sober living homes that are run as commercial

ventures for financial gain are subject to the heightened health and safety regulations required for

recovery residences in the State of Utah.

**West Jordan City Enforcement Proceedings**

75.     Upon information and belief, on December 22, 2015, West Jordan City issued a

$2,000 citation to Plaintiff Zimmerman for noncompliance.

76.     Upon information and belief, on December 22, 2015, West Jordan City officials

and DHS searched the 7077 South 2310 West, West Jordan sober living home and harassed its

residents.

77.     Upon information and belief, on December 29, 2015, West Jordan City mailed a

copy of the $2,000.00 citation to the sober home at 7077 South 2310 West, West Jordan, Utah.

The citation was addressed to "Current Resident" at the sober living home.

78.     The citation frightened the residents, and many house members fled their home

out of fear of retaliation, and other residents were ordered by their probation officers to leave

their home or face non-compliance of their probation and be sent to jail.

79.     On January 3, 2016, Plaintiff Zimmerman sent an email to Plaintiff Andersen

instructing Andersen not to allow any West Jordan City or State official into the home because

they paid an extra $193.00 to West Jordan City to opt out of the City's "Good Landlord

Program" and to have the privilege of disallowing the city to intrude and inspect the residence.

80. Upon information and belief, on January 4, 2016, Defendant West Jordan City informed Plaintiff Zimmerman the City was going to file criminal charges against her and lien the house unless they vacate the sober living home residents immediately.

81. Plaintiff Zimmerman has received a Notice of Violation from West Jordan City requiring that she comply with the City and DHS licensing regulations. West Jordan City has imposed upon Plaintiff Zimmerman an accruing $50.00 per day penalty. Additionally, if Plaintiff Zimmerman does not comply with the business licensing scheme by January 14, 2016, West Jordan City will impose upon Plaintiff Zimmerman a $100 per day penalty until compliance is met.

**West Valley City Enforcement Proceedings**

82. There are presently two subject sober-living homes in West Valley City. The first home is located at 4082 W Mann Way, which was opened in September 2014. The second sober-living home in West Valley City is a townhome, located at 4078 W Mann Way, which opened in October 2015.

83. On February 18, 2015, Defendant West Valley City Code Enforcement Officer Tumi Young went to the 4082 W Mann Way, West Valley City home and discovered the home was being used as a sober living home. Defendant noted there were nine (9) disabled individuals living in the home and asserts they were paying $395 in monthly rents and expense shares.

84. On February 18, 2015 Officer Young unlawfully trespassed on the property's front and fenced back yard, even though he had no permission to be on the property and there was a posted NO TRESSPASSING sign on the gate leading to the back yard. Officer Young took pictures of the yard, and without permission entered the fenced back yard. Young opened

18

the Plaintiffs storage shed, entered the shed, and then took pictures of the inside of the shed, which he included in his citation documentation.

85.     On February 18, 2015, after West Valley City's Code Enforcement Officer Young's unlawful trespass and illegal search of the 4082 premises, he then issued a $1,000 citation to Plaintiffs for not having a business license and for having an "inoperable vehicle" because the van in the driveway had a flat tire. However, landlord Coomer maintains she already had a West Valley City renter's business license for the home, and the car was licensed, insured and used daily, and its flat tire was easily remedied by inflating it.

86.     After Officer Tumi Young's trespass and illegal search, he issued erroneous citations and also filed a discriminatory city administrative and police complaint on March 2, 2015. This notified the Defendant West Valley City officials and its city police officers that the 4082 home was a "Sober Living Home." Defendant West Valley City police and city administrators singled out the House and its Members, and Plaintiff Andersen. The West Valley City Defendants relentlessly discriminated, harassed, coerced, and threatened Plaintiff Andersen as well as the other house members through November 2015.

87.     On approximately March 20, 2015, one of the offending West Valley City Police Officers, Defendant William Chow, called, harassed, and threatened Plaintiff Andersen for operating the sober home at 4082 W Mann Way. Defendant Police Officer Chow threatened to incarcerate Plaintiff Andersen and his "drug addict friends" if Plaintiff Andersen did not shut down the sober-living home. Officer Chow has harassed and threatened the Plaintiffs on multiple occasions.

88.     On approximately April 25, 2015, Defendant Chow and his associates unlawfully

entered and searched the 4082 West home unannounced and without permission.

89.     Defendant Chow continued to call Plaintiff Andersen on various occasions to interrogate, intimidate, coerce, and harass him; including making the erroneous claim that Plaintiff Andersen was violating West Valley City codes and Utah laws and ordinances. Defendant Chow threatened he was going to make certain the subject sober home was shut down.

90.     On or about May 2015, Defendant Chow and his police partner repeatedly came to the home at 4082 West Mann Way home, and without consent searched the home including its bedrooms.

91.     On several occasions, Plaintiff Andersen requested "Reasonable Accommodations" under federal law from Code Officer Young and Police Officer Chow and his police partner.

92.     On one occasion in May 2015, Police Officer Chow visited the sober home. While interrogating Plaintiff Andersen, Mr. Andersen offered to show and provide the police officers a legal memorandum as well as applicable United States Appellate and Supreme Court Rulings that affect and protect the sober living home; however, both officers refused to accept a copy or even read the documents that Andersen offered to help them understand the nature, purpose, and protections of the home.

93.     On or about May 5, 2015 Defendant Chow returned to the home and lectured Plaintiff Andersen about law, and stated that West Valley City, and Utah State laws take precedent over all federal laws, and that Plaintiff Andersen's requests for reasonable accommodations "didn't matter" or "have any bearing in West Valley City or in the State of

Utah."

94.     On this same occasion in May 2015, while being interrogated by Defendant Chow's police officer companion, Plaintiff Andersen again requested reasonable accommodations, and the officer instructed Andersen that he was "not entitled anything." Again, Officer Chow threatened to close the home. Defendant Chow's harassment and threatening actions against Plaintiff Andersen occurred before the revised UCA 62A-2 took effect that included the required licensure of the newly created "recovery residence."

95.     On October 19, 2015, Code Officer Tumi Young contacted the landlord Jennifer Coomer and told her that her home was being used illegally. As a result, on or about March 13, 2015, Ms. Coomer worked in conjunction with West Valley City Police who unlawfully placed two separate Three Day Eviction Notices to Vacate the subject property on the front door of the home.

96.     On or about March 14, 2015, Plaintiff Andersen wrote a letter to 4082 West Valley City sober living homeowner Jennifer Coomer requesting "reasonable accommodations" in response to Coomer's 3 day eviction notices.

97.     On or about March 22, 2015, Plaintiff Andersen emailed West Valley City Code Officer Tumi Young requesting reasonable accommodations to resolve Ms. Coomer's West Valley City citations. Plaintiff Andersen's request was rejected.

98.     As a result of the threatening notices, seven of the nine house members became so disillusioned and frightened at the coercive threats of being evicted and becoming homeless, they left the home. The continual discriminatory actions of West Valley City Officials and Landlord Coomer caused a chilling effect and the house did not reach full occupancy until March 2016.

Because the house expenses are shared equally amongst all of the members of the house, the residents' exodus resulted in financial insolvency and the inability to pay all of the expenses of the house including; rent, gas, electricity, water, sewer, garbage, cable, internet, maintenance, start-up loan payments, and other house expenses.

99.     After Plaintiff Andersen received the 3-Day Notice to Vacate authored by Ms. Coomer and served by West Valley City Police, Plaintiff Andersen sent both parties a written request for reasonable accommodations pursuant to 42 U.S.C. § 3604(f)(3)(B), but received no response from the City or Ms. Coomer and Andersen was stonewalled.

100.    West Valley City officials enlisted its code enforcement officials to attempt to close the sober-living homes. Defendant Code Officer Tumi Young harassed, intimidated, threatened and coerced the Plaintiffs and home owners by repeatedly targeting the homes by visiting the homes, confronting Plaintiff(s), and issuing erroneous citations with significant financial consequences including:

      a.      Citation Disabled Vehicle violation, for Plaintiff(s) car having a flat tire while parked in the driveway at the home;

      b.      Citation Solid Waste violation, for the Plaintiff(s) setting out remodeling debris for the city's monthly scheduled curbside bulk waste pick-up, even though it was just one day prior to said 6:00 am pick-up, which IS actually allowed by city policy;

      c.      Citation Business License violation issued on October 19, 2015, for $1,000.00, for Plaintiffs residing at the West Valley City homes;

      d.      Citation Land Use violation, for Plaintiffs residing at the West Valley City homes having more than the allowed non-related individuals living at the dwellings;

e.     Citation Landscape violation issued on October 19, 2015 for $500, when Plaintiffs improved the homes' appearance and replaced the then solely dirt and weed infested yard with "zero-scape" plants, trees, decorative rock and gravel, and vegetative mulch. To this day the city insists that Plaintiff(s) install water using vegetation while other adjacent neighborhood homes continue having no landscape at all; and

f.     Another code violation, when heavy winds blew down a four-foot section of yard cedar fencing, which is not the Plaintiff(s) responsibility to maintain because it belongs to utility companies for access to the electricity, cable, and telephone junction boxes in the back yard.

101.     On May 22, 2015, Plaintiff Andersen sent an email and requested reasonable accommodations to Defendant Code Officer Tumi Young, and Defendant Young denied Andersen's request and stonewalled Andersen.

102.     West Valley City Code Enforcement's actions are discriminatory and targeted the resident individuals with disabilities. After Plaintiffs submitted a GRAMA demand for information requesting all similar citations given in the neighborhood, such request revealed no other city citations given to other nearby residents who were in fact violating the same and similar alleged violations.

103.     On April 9, 2015, as a result of West Valley City's officials' actions and enforcement of UCA §62A-2, Ms. Coomer sued the Plaintiffs in this case. Plaintiff Andersen and NXLevel Network, LLC, in the matter *Jennifer Coomer v. Alan Anderson, et al.* ("Eviction Case") in the Third District Court, West Jordan, Salt Lake County, State of Utah, Case Number 150405242 for eviction.

104.    The eviction litigation is still ongoing.

105.    The Plaintiffs Andersen and NXLevel Network, LLC have incurred significant expenses because of the West Valley City's officials' instigation of the Eviction Case.

106.    Upon information and belief, on November 6, 2015, West Valley City Police and DHS officers searched the 4082 West Valley City sober living home.

**Riverdale City Enforcement Proceedings**

107.    Upon information and belief, on November, 6, 2015, Riverdale Police Officer Kevin Fuller called Plaintiff Andersen's wife Raylin about Riverdale sober house and threatened he was going to file criminal charges against Plaintiff Andersen. Officer Fuller asserted that state and city rights trump the Federal Fair Housing Act, and ADA.

108.    Upon information and belief, on November 6, 2015, Defendant DHS Program Manager Jeffrey Harris searched the 4082 West Valley City sober living home.

109.    On November 9, 2013, Plaintiff Andersen sent an email to Defendant Riverdale City requesting reasonable accommodations.

110.    On November 9, 2013, Plaintiff Andersen filed HUD Complaint against Riverdale City for discrimination, coercion, and retaliation.

111.    On November 24, 2015, Plaintiff Andersen sent an email to Riverdale Mayor Searle, Riverdale City Police Chief, Police Officer Fuller, and the DHS, requesting reasonable accommodations. Plaintiff Andersen never received any response.

112.    Upon information and belief, on December 3, 2015, DHS officials searched the Riverdale sober living home. Defendant DHS Licensing Specialist Jerry Gansey interrogated

resident Matthew Parkinson.

**Sandy City Enforcement Proceedings**

113.     On March 14, 2015, Officer T. Nielsen of Sandy City issued a "Notice to Correct City Code Violation" to the sober living home at 10524 S Goldenwillow Ct, Sandy, UT 84070. The alleged code violation is failure to obtain a business license for operating a group home or having a home base business. The Notice to Correct City Code Violation states that the violation must be corrected by March 26, 2016. The Notice states that a failure to comply with the city ordinance is a criminal offense.

**The State's Enforcement Proceedings**

114.     On March 10, 2015, DHS Program manager Jeffrey Harris called Plaintiff Andersen instructing Andersen of new State laws that require sober living home licensing.

115.     On March 10, 2015, Plaintiff Andersen sent DHS Program Manager Jeffrey Harris an email confirming receipt of DHS Harris' call.

116.     On March 10, 2015, Plaintiff Andersen sent Defendant DHS Jeffrey Harris an email requesting reasonable accommodations.

117.     On March 11, 2015, Defendant DHS Jeffrey Harris answered Plaintiff Andersen's March 10, 2015, email, admitting that the new laws were written and promoted by the DHS with the sole purpose to regulate all sober living homes.

118.     On March 12, Defendant DHS Jeffrey Harris answered Plaintiff Andersen denying Andersen's request for reasonable accommodations and again instructs Andersen to license all sober living homes.

119. On September 29, 2015, Plaintiff Andersen sent an email to Defendant DHS Jeffrey Harris inquiring about licensing with DHS. Plaintiff Andersen feared criminal charges after DHS and several illegal police searches of sober living homes. Plaintiff Andersen was seeking to prevent any criminal charges against him.

120. On October 19, 2015, Defendant DHS Jeffrey Harris sent an email to Plaintiff Andersen informing Andersen of the need to license the sober living homes and the homes cannot operate without licensure.

121. On October 19, 2015, Defendant West Valley City issued Plaintiff Andersen a $1,000 per month fine for business license violation and illegal new low water landscape installation.

122. On December 29, 2015, Plaintiff Andersen received an email from Defendant Jeffery Harris at DHS containing a "cease and desist order" issued by Defendant Gerald Gansey on August 14, 2015. However, Plaintiff Andersen never received the cease and desist order. DHS denied Plaintiff Andersen's requests for reasonable accommodations and was informed that all of the sober living homes were being treated by the State as "recovery residences" under UCA §62A-2. As such, the DHS mandated that all the sober living homes comply with licensure as a health care facility, even though the homes only provide housing accommodations.

123. According to both Defendants Jeffrey Harris ("Harris") and Gerald Gansey ("Gansey"), at the time of the visits to the Riverdale and West Valley locations, investigators were told that there were no services and specifically no treatment available in the homes and that therapy was done outside of the home. The residents indicated to him that they were only residing in the home and paying rent, nothing more.

124.    According to Defendant Harris, Plaintiff Allen Andersen has a verbal agreement, and not a written lease. All recovering alcoholics or addicts are admitted to the homes on verbal agreement, if they maintain their sobriety.

125.    According to Defendant Harris, if there was a landlord lease agreement between the two parties, then Plaintiff Allen Andersen's homes would not be recovery residences.

126.    According to Defendants Gansey and Harris, if a home similar to an Oxford House fits that model or criteria, there would be no licensing requirements.

127.    Defendant Harris concluded, based on his interviews with the residents of the West Valley and West Jordan homes, that Plaintiff Allen Andersen or onsite managers would dictate who would live in the houses, whether stays would be extended, even if the client was still using drugs and under what conditions new clients would be accepted.

128.    Defendant Harris visited at least two homes based on a "complaint" that Andersen was running a sober home. He confused Andersen's sober living homes with the state defined recovery residences.

129.    Defendant Harris conducted the inspections to determine whether or not they required a license. He concluded they were recovery residences and notified Andersen via email that they would need to be licensed.

130.    Defendant Harris has never before gone to a residence and knocked on the door, identified himself as being from the State and then asked to take a look at the place.

131.    Defendant Harris told the residents that he was there to determine whether the home needed licensure or not.

132.     Plaintiff Robert Gurney stated in his affidavit that the residents were threatened with eviction by State officials at the time of their visits to the homes

133.     Defendant Harris asked the residents that he interviewed if they were recovering addicts or alcoholics. Each of the residents interviewed indicated that they were.

134.     Defendant Harris told the residents he interviewed that his purpose in being there was to gather information as to whether or not they were a recovery residence. The residences shared other issues with him that were not part of his investigation.

135.     Defendant Harris believes that as a landlord, Plaintiff Allen Andersen met the requirement for maintaining recovery residences because of a complaint of unsuccessful eviction that one resident attempted of another resident.

136.     Defendant Harris did not learn during his visit to any of the homes that the residents were receiving any type of services or that the home is being held out as a recovery residence. Harris further did not learn that the homes received any public funding or that they were a commercial venture for financial gain.

137.     Defendant Harris intended to pursue enforcement action against Andersen, if the homes met the State defined criteria for recovery residences, including the eviction of all residents, having Andersen find them a new place to live at his own expense and pursuing an injunction against Andersen and his running of the properties.

138.     Defendant Harris does not know what facts he learned that led him to conclude that these homes were recovery residences.

139.     Defendant Harris' only factual basis for determining that the homes are recovery residences is that they have a house manager and that somehow constitutes supervision.

140.     Defendant Gansey had absolutely no information about the operation of the house as coming from neighbors with respect to the safety and public disturbances associated with the house before approaching the neighbors.

141.     Defendant Gansey claimed that his purpose in talking to the neighbors had nothing to do with determining whether they were a recovery residence because they wouldn't know any of the criteria for a recovery residence.

142.     Although he could not provide statutory support, Defendant Gansey believes that, based on discussions in staff meetings, if a landlord puts up a list of treatment centers in his sober living homes, it qualifies as outsourcing services for residents.

**Illegal Searches**

143.     Defendant Harris visited two homes, the West Valley home and the West Jordan home. He asked permission to enter the homes, understood that they were occupied by more than one resident, but failed to get permission from each occupant of each bedroom. He did not attempt to go into bedrooms that were closed.

144.     On December 7, 2015, Defendant DHS Program Manager Jeffrey Harris and DHS officer Natalie Cornell searched the 7077 South 2310 West, West Jordan sober living home.

145.     No residents complained to the State and Harris had no other information about the house other than from a neighbor.

146.     Defendant Harris knew before he went to the West Valley home that it was operated by Plaintiff Allen Andersen.

147.     When Defendant Harris visited the West Valley Home, Harris, who was wearing a badge, along with a colleague, identified himself as an employee with the State of Utah,

Department of Human Services, Office of Licensing. He further identified his purpose in being there. He asked if he could walk through the home, take pictures and interview them. There were eight residents living in the home. Only three were there when Harris was there.

148. Defendant Harris had permission from just "some of the residents" of the homes, but not all residents.

149. Defendant Harris visited a second home in West Valley where he was greeted by one person at the door, but not allowed access.

150. At the time Defendant Harris visited the West Valley homes, he knew of the cease and desist from the State.

151. According to Defendant Harris, there was a search of the Riverdale location in December 2015.

152. Defendant Harris decided to visit the West Valley home and West Jordan home without permission or notification from Plaintiff Andersen and believes he has authority to do that at his discretion.

153. Defendant Harris made two visits to the West Jordan home.

154. Defendant Harris did not learn much on his first visit to the West Jordan home and decided to go back. He did a quick walkthrough, looked at a couple of things and "just knew" that the residents were there as recovering residents from substance abuse.

155. Defendant Harris' sole purpose in going to the residences was to determine if they needed licensure, there was no emergent or health threat or other imminent need for anyone to check on the safety of the residents.

156.     Plaintiff Allen Andersen had prior knowledge of the search in Riverdale, at which time he asked for a reasonable accommodation. The first time he knew of Defendant Harris going into the West Valley and West Jordan homes taking pictures was new information to him.

157.     Defendant Brett Su'a did not need to go inside of the home in order to obtain the information that he got about the nature of the operations inside that home.

158.     Defendant Gansey went to the Riverdale home to find out what the purpose of the home was, why the home was there and why the residents were there.

159.     Defendant Gansey asked the residents of the Riverdale home if they had a business license with Riverdale City, if they had a health inspection or if a fire marshal clearance was obtained within the home.

160.     Defendant Gansey walked through the facility on his first visit looking at bedrooms, kitchen, laundry and rooms. Gansey did not feel it was appropriate to take photographs of the inside of the home.

161.     Defendant Gansey and a colleague went on a second visit to the Riverdale home on December 3, 2015. The residents were visibly nervous during the second visit. Gansey assured the residents during his interviews with them that he was not there to shut the home down, that he only wanted to get some information.

162.     Defendant Gansey randomly knocked on neighbors' doors in Riverdale, informing them of the nature of the home, who lived there and asking them if they had any concerns.

163.     Defendant Gansey spoke to two male residents on his second visit to the Riverdale home.

164.     Defendant Gansey assumed the residents in the home received the Cease and Desist letter issued by the State.

165.     Defendant Gansey believed that Andersen's sober living homes fit into the category of a residential recovery residence because there is a house manager, all of the residents are in recovery and he is "out servicing services."

166.     Defendant Gansey went out on his second visit only to interview neighbors of the home despite not having received any complaints from any neighbors or member of the general public about the operations of the home.

167.     Defendant Gansey went to the neighbors first and asked if they had any concerns, whether or not they had seen anything, if there were any disturbances, if there was law enforcement involvement, any type of paramedics or emergency medical services, or of there were any type of domestic situations going on at that time.

168.     Defendant Gansey never notified residents in the Riverdale home that he had been speaking to neighbors.

169.     Defendant Gansey contacted the Attorney General's office and his directors before visiting with the neighbors at the Riverdale home to get clear direction on what the purpose was when talking to them. Gansey did not otherwise question the release of confidential information.

170.     Defendant Gansey's second visit was verbally "ordered" by Harris to do a follow up at the home and to inquire of neighbors.

171.     Defendant Gansey consulted first with Harris and then Diane Moore of the DHS before the telephone conference with the Attorney General. Gansey's intended strategy did not change on what he was intending to do.

172.     Defendant Gansey spoke with Moore after the December site visit about talking with neighbors.

173.     According to Diane Moore, it would not be the State's operating protocol to knock door-to-door and let the neighbors know that there is an unlicensed sober living home in their neighborhood.

174.     According to West Valley City Code Enforcement documents, Officer Tumi Young conducted an illegal search of the sober home located at 4082 W Mann Way, West Valley City, Salt Lake County, Utah, when Officer Young unlawfully entered the private residence fenced yard with NO TRESSPASSING NOTICE posted and also opened and entered the enclosed shed, wherein he took pictures and has provided such to Plaintiffs.

**Results of State Investigations**

175.     Defendant Gansey believed the residence was operating as a recovery residence because all of the residents were in recovery, they paid rent to Plaintiff Allen Andersen and that he was "outsourcing" services at that time. Plaintiff Allen Andersen, in fact was not offering any services. Each individual was responsible to get that on their own treatment, if needed.

176.     Defendant Gansey determined at the end of his investigation, that Plaintiff Allen Andersen's Riverdale home was, if anything, a residential recovery and not residential treatment.

177.     Defendant Gansey felt that there was a level of care in Andersen's Riverdale home that was provided that was not typical of an Oxford home.

178.    Defendant Gansey would not do a corrective action plan for an unlicensed facility.

179.    Defendant Gansey indicated he was not aware of and had no discussions with anyone prior to the filing of this lawsuit of what to do with residents if they were asked to leave the property.

180.    Plaintiffs have suffered personal injury including severe emotional distress as a result of each of the Defendants, including Plaintiff Andersen, who because of distress had to check into McKay Dee Hospital Psychological Inpatient Hospital from May 13 through May 20, 2015.

181.    Plaintiffs have suffered economic injury from losing the threatened residents and that Defendants enforcement actions did cause a chilling effect with deflected new and potential residents at each of the six homes.

## SUPPLEMENTAL FACTS

182.    This Court held a hearing on January 22 and 25, 2016 regarding the Plaintiffs' *Motion for Preliminary Injunction/Temporary Restraining Order*.

183.    Since the hearing, in March of 2016, the Utah Legislature passed House Bill 259, which again amended the definition of "recovery residence" under UCA 62A-2-101(24) as follows:

> (a)    "Recovery residence" means a home, residence, or facility that meets at least two of the following requirements:
> > (i)    Provides a supervised living environment for individuals recovering from a substance abuse disorder;
> > (ii)    Provides a living environment in which more than half of the individuals in the residence are recovering from a substance abuse disorder;

        (iii)    Provides or arranges for residents to receive services related to their recovery from a substance abuse disorder, either on or off site;

        (iv)    Is held out as a living environment in which individuals recovering from substance abuse disorders live together to encourage continued sobriety; or

        (v)    (A) receives public funding; or (B) is run as a business venture, either for profit or not-for-profit.

(b)    "Recovery residence" does not mean:

        (i)    a residential treatment program;

        (ii)    residential support; or

        (iii)    a home, residence, or facility, in which:

            a.    residents, by their majority vote, establish implement, and enforce policies governing the living environment, including the manner in which applications for residence are approved and the manner in which residents are expelled;

            b.    residents equitably share rent and housing-related expenses; and

            c.    a landlord, owner, or operator does not receive compensation, other than fair market rental income, for establishing, implementing, or enforcing policies governing the living environment.

## CLAIMS FOR RELIEF

184.    For all causes of action listed below, Plaintiffs seek relief under both statutes (UCA 62A-2-101 *et seq.*); the statute as before the March 2016 amendment (see ¶ 51) as well as the statute after the March 2016 amendment (see ¶ 183).

## COUNT I
## DECLARATORY RELIEF

185.    Plaintiffs re-allege and incorporate herein by reference all preceding paragraphs as if fully set forth herein.

186.     The Defendant the State of Utah has amended UCA 62A-2 to require that "Recovery Residences" comply with additional significantly burdensome licensing programs.

187.     The Plaintiffs' sober living homes may qualify as "recovery residences"; however, Plaintiffs' sober living homes also meet the exception to "recovery residence."

188.     The intent of the legislature was to exclude from licensure the lowest level of care such as Oxford Houses evidenced by the exception to "recovery residence."

189.     Under the Statute, Oxford Houses also qualify as a "recovery residence" but are also excluded by the exception.

190.     Any sober living home that is an Oxford House or is comparable to an Oxford House would not need licensure.

191.     The Defendants do not know the criteria for Oxford Houses.

192.     The Defendants have not attempted to license any of the Oxford Houses in Utah.

193.     UCA § 62A-2 is unconstitutionally vague and ambiguous.

194.     On August 14, 2015, Defendants, the State of Utah through DHS and its agents, Jeffrey Harris and Gerald Gansey, issued a "cease and desist" order to Plaintiff Andersen threatening Andersen with potential penalties and criminal charges if compliance with the licensing scheme was not met.

195.     The Plaintiffs' sober living homes only provide housing to recovering alcohol and drug addicts.

196.     The Plaintiffs' sober living homes do not provide any medical or rehabilitation services for its residents.

197.     The sober living homes' residents are disabled persons under the FHA and ADA.

198.    The amended UCA 62A-2 facially discriminates against the Plaintiffs by treating the Plaintiffs in such a way that:

    a.   Violates the FHA as particularly described in Count II;
    b.   Violates the ADA as particularly described in Count III; and
    c.   Violates the Plaintiffs' civil rights as particularly described herein.

199.    The Court should enter and order a Declaration that:

    a.   UCA 62A-2 is invalid and preempted by federal law insofar as it conflicts with the FHA and ADA;
    b.   Defendants are enjoined from enforcing the UCA 62A-2 against the Plaintiffs insofar as it conflicts with federal law; and
    c.   Defendants are enjoined from either directly or indirectly interfering in any way with Plaintiffs' current use of the sober living homes.

200.    The Defendants' application of UCA 62A-2 towards the Plaintiffs is arbitrary and capricious.

201.    For the above-mentioned reasons, Plaintiffs seek monetary damages and injunctive relief.

## COUNT II
## FAIR HOUSING ACT

202.    Plaintiffs re-allege and incorporate herein by reference all preceding paragraphs as if fully set forth herein.

203.    The Defendant State of Utah has amended UCA62A-2 to require that "Recovery Residences" comply with a significantly burdensome licensing program.

204.    The Plaintiffs' sober living homes may qualify as a "recovery residence" and therefore must comply with the amended licensing scheme; however, Plaintiffs' sober living homes also meet the exception to a "recovery residence."

205.    The intent of the legislature was to exclude from licensure the lowest level of care such as Oxford Houses.

206.    Under UCA 62A-2-101, Oxford Houses qualify as a "recovery residence" but that would be an overreach of the regulation.

207.    Any sober living home that is an Oxford House or is comparable to an Oxford House would not need licensure.

208.    The Defendants do not know the criteria for Oxford Houses.

209.    The Defendants have not attempted to license any of the Oxford Houses in Utah.

210.    UCA62A-2 facially violates the Federal Housing Act, 42 U.S.C. §§ 3601, *et seq.*

211.    Defendants and each of them are violating Plaintiffs' rights under the Fair Housing Act, 42 U.S.C. §§ 3601, *et seq*, and implementing its regulations by:

    a.    denying and otherwise making housing unavailable to Plaintiffs Gurney and Hodgson because of their disability;

    b.    denying reasonable accommodations in rules, policies, or practices so as to afford people with disabilities, Plaintiffs Gurney and Hodgson, an equal opportunity to live in a dwelling;

    c.    limiting Plaintiffs Andersen, NXLevel Network, LLC, and Zimmerman in renting housing to individuals who have a disability;

    d.    using their police powers as a pretext to exclude Plaintiffs Gurney and Hodgson, because of their disability, from zoning neighborhoods;

    e.    using their police powers as a pretext to deny Plaintiffs Gurney and Hodgson, because of their disability, opportunity to live in the same neighborhoods as people without disabilities;

    f.    interfering with the right of Plaintiffs Gurney and Hodgson to live in dwellings of their choice;

    g.    discriminating against Plaintiffs by disparate treatment;

    h.    discriminating against Plaintiffs by implementing and enforcing State law that provides disparate impact of law, practice or policy; and

    i.    retaliating against Plaintiffs because of their exercise of their fair housing rights.

212.    For the above-mentioned reasons, Plaintiffs seek monetary damages and injunctive relief.

## COUNT III
## AMERICAN WITH DISABILITIES ACT

213.     Plaintiffs re-allege and incorporate herein by reference all preceding paragraphs as if fully set forth herein.

214.     Under the Americans with Disabilities Act, 42 U.S.C. 12188, enforcement includes, injunctive and equitable relief, including monetary damages to persons aggrieved, vindication of public interests, and enforcement by the U.S. Attorney General in the assessment of civil penalties not to exceed a $50,000 penalty for a first violation and $100,000 for any and all subsequent violations.

215.     The Defendant State of Utah has amended UCA 62A-2 to require that "recovery residences" comply with a significantly burdensome licensing program.

216.     The Plaintiffs' sober living homes may qualify as "recovery residences" and therefore must comply with the amended licensing scheme; however, Plaintiffs' sober living homes also meet the exception to a "recovery residence."

217.     The intent of the legislature was to exclude from licensure the lowest level of care such as Oxford Houses.

218.     Under the Statute, Oxford Houses qualify as a "recovery residence" but that would be an overreach of the regulation.

219.     Any sober living home that is an Oxford House or is comparable to an Oxford House would not need licensure.

220.     The Defendants do not know the criteria for Oxford Houses.

221.     The Defendants have not attempted to license any of the Oxford Houses in Utah.

222.    The Plaintiffs Allen Andersen, NXLevel Network, LLC, and Zimmerman are associated with, and/or provide housing to people with disabilities as defined in 42 U.S.C. 12102(2).

223.    Plaintiffs Gurney and Hodgson are individuals with a disability, as defined in 42 U.S.C. § 12102(2), and are residents of sober living homes located respectively at 5282 South 575 West, Riverdale City and 7077 South 2310 West, West Jordan.

224.    The Defendants are public entities or are agents of public entities under 42 U.S.C. 12131(1).

225.    Under the Americans with Disabilities Act, 42 U.S.C. 12202, the Plaintiffs shall not be immune for any violation of the ADA or FHA. In any action against a State or Subsidiary of the State for a violation of the requirements of the ADA and FHA, and remedies include both those in law and equity.

226.    UCA 62A-2 facially violates the Americans with Disabilities Act, 42 U.S.C. 12132 *et seq.*

227.    The actions of the Defendants to exclude the sober living homes from residential zones and attempt to legislate the sober living homes violate the rights of the Plaintiffs under the Americans with Disabilities Act, 42 U.S.C. 12132 *et seq.*, and the regulations promulgated thereunder by:

      a.  denying the individual residents of the Plaintiffs who are in recovery from alcoholism and substance abuse the opportunity to participate in or benefit from the supportive housing program offered;

      b.  using municipal police powers and methods of administering those powers with the purpose of subjecting the Plaintiffs to discrimination on the basis of their handicap;

      c.  subjecting the individual Plaintiffs, on the basis of their disability, to discrimination;

  d. denying the individual Plaintiffs and residents an opportunity to participate in a program in the most integrated setting appropriate to their needs;

  e. denying the individual Plaintiffs and residents of the sober living homes, who are disabled persons, an equal opportunity to participate in or benefit from services and programs equal to those of people without disabilities;

  f. utilizing municipal code enforcement services that are not equal to groups of related non-disabled persons and groups of unrelated disabled persons who are not recovering alcoholics and drug addicts.

228. The Defendants are prohibited from retaliation and coercion under the Americans with Disabilities Act, 42 U.S.C. 12203.

  a. Retaliation. No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by the ADA or because such individual made a charge, testified, assisted, in any manner in an investigation, proceeding, or hearing under the ADA or FHA.

  b. Interference, Coercion, or Intimidation. It shall be unlawful to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account his or her having exercised or enjoyed, or on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of, any right granted or protected by the ADA or FHA.

  c. Remedies and Procedures. The Remedies and procedures available under sections 107, 203, and 308 of the ADA shall be available to aggrieved persons for violations of subsections (a) and (b), with respect to Title I, Title II and Title III respectively.

229. For the above-mentioned reasons, Plaintiffs seek monetary damages and injunctive relief.

**COUNT IV**

## 42 U.S.C. SECTION 1983

230.     Plaintiffs re-allege and incorporate herein by reference all preceding paragraphs as if fully set forth herein.

231.     The Defendant State of Utah has amended UCA62A-2 to require that "recovery residences" comply with a significantly burdensome licensing program.

232.     The Plaintiffs' sober living homes qualify as "recovery residences" and therefore must comply with the amended licensing scheme; however, Plaintiffs' sober living homes also meet the exception to "recovery residence."

233.     The intent of the legislature was to exclude from licensure the lowest level of care such as Oxford Houses.

234.     Under the Statute, Oxford Houses qualify as a "recovery residence" but that would be an overreach of the regulation.

235.     Any sober living home that is an Oxford House or is comparable to an Oxford House would not need licensure.

236.     The Defendants do not know the criteria for Oxford Houses.

237.     The Defendants have not attempted to license any of the Oxford Houses in Utah.

238.     UCA 62A-2 facially violates 42 U.S.C. Section 1983.

239.     The Defendants DHS, Jeffrey Harris, Gerald Gansey, Draper City; Vivien Pearson, David Bernal, West Jordan City, Brett Su'A, West Valley City, William Chow, Tumi Young, and Riverdale City acting under color of State law, are violating Plaintiffs' civil rights under 42 U.S.C. § 1983 as applied by:

a. utilizing their legislative and police powers and methods of administering those powers with the purpose of subjecting Plaintiffs and Plaintiffs' residents to discrimination solely on the basis of their handicap;

b. subjecting the individual Plaintiffs and Plaintiffs' residents, solely on the basis of their handicap, to discrimination under its police powers;

c. denying Plaintiffs the equal protection of the law guaranteed by the Fourteenth Amendment to the United States Constitution by applying its legislative and police powers in such a manner as to arbitrarily and irrationally deny Plaintiffs, because of their handicaps and the handicaps of their residents in sober living homes, the residential opportunities afforded to groups of related nondisabled persons and unrelated disabled persons who reside at the sober living residences;

d. denying Plaintiffs the equal protection of the law guaranteed by the First Amendment to the United States Constitution by applying its legislative and police powers in such a manner as to deny Plaintiffs' right of association;

e. denying Plaintiffs their Fourth Amendment right against unreasonable search and seizure; and

f. denying the Plaintiffs their rights to Reasonable Accommodations under the FHA and ADA which has resulted in personal injury as well as other damages.

240. Defendants performed illegal searches of the sober living homes.

241. Defendants took pictures during their illegal searches and made them public record, accessible to anyone, unconscionably exposing the Plaintiffs' identities, private information, and health information.

242. Defendants violated HIPAA. Defendants admittedly solicited neighbors for information about the sober living homes' residents by going door-to-door, willfully disclosing the Plaintiffs' identity, health information, and disability status.

243. The Plaintiffs have suffered personal injury as a result of the Defendants actions, and as such Plaintiffs are entitled to damages.

244. For the above-mentioned reasons, Plaintiffs seek monetary damages and injunctive relief.

**COUNT V**
**PREEMPTION OF UCA 62A-2 BY FAIR HOUSING ACT, 42 U.S.C. § 3601 *et seq*. AND AMERICANS WITH DISABILITY ACT, 42 U.S.C. § 12132.**

43

245.    Plaintiffs re-allege and incorporate herein by reference all preceding paragraphs as if fully set forth herein.

246.    Utah State Law UCA 62A-2 conflicts with Federal Laws 42 U.S.C. § 3601 *et seq*. and 42 U.S.C. § 12132 and stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress in that it allows the State of Utah to require a significant and burdensome licensing program for disabled persons who simply wish to live together in a drug-free environment WHEREAS federal law: a) under the ADA, prohibits a public entity from administering a licensing program in a manner that subjects disabled persons to discrimination on the basis of disability (ADA, 28 C.F.R. § 35.130(6)) and b) under the FHA, expressly provides that any state or local law "that purports to require or permit any action that would be a discriminatory housing practice under this subchapter shall to that extent be invalid" (FHA, 42 U.S.C. § 3615).

247.    Therefore, the Utah State Law UCA 62A-2 is preempted by Federal Laws 42 U.S.C. § 3601 *et seq*. and 42 U.S.C. § 12132 and is invalid pursuant to the Supremacy Clause of the United States Constitution.

248.    For the above-mentioned reasons, Plaintiffs seek injunctive relief.

## COUNT VI
## FAIR HOUSING ACT, 42 U.S.C. § 3601 *et seq*.: DISPARATE IMPACT

249.    Plaintiffs re-allege and incorporate herein by reference all preceding paragraphs as if fully set forth herein.

250.    Defendants enforced the previous UCA § 62A-2-101 *et seq*. (the statute before the March 2016 amendment) against Plaintiffs.

251.    Defendants' enforcement of the statute included illegal means such as performing illegal searches violating Plaintiffs' Fourth Amendment rights, interrogating neighbors about Plaintiffs, taking photographs of residents' private rooms without residents' consent, among other illegal acts.

252.    In May 2015, the Utah Legislature amended UCA 62A-2-101 *et seq.*

253.    The Defendant State of Utah has amended UCA62A-2 to require that "Recovery Residences" comply with a significantly burdensome licensing program.

254.    The Plaintiffs' sober living homes may qualify as "recovery residences" and therefore must comply with the amended licensing scheme; however, Plaintiffs' sober living homes also meet the exception to a "recovery residence."

255.    The intent of the legislature was to exclude from licensure the lowest level of care such as Oxford Houses.

256.    Under the Statute, Oxford Houses qualify as "recovery residences" but that would be an overreach of the regulation.

257.    Any sober living home that is an Oxford House or is comparable to an Oxford House would not need licensure.

258.    The Defendants do not know the criteria for Oxford Houses.

259.    The Defendants have not attempted to license any of the Oxford Houses in Utah.

260.    UCA62A-2 facially violates the Federal Housing Act, 42 U.S.C. §§ 3601, *et seq*.

261.    The amended UCA 62A-2 facially discriminates against the Plaintiffs by treating the Plaintiffs in such a way that:

    a.  Violates the FHA as particularly described in Count II;
    b.  Violates the ADA as particularly described in Count III; and

45

  c. Violates the Plaintiffs' civil rights as particularly described herein.

262. Defendants argue that Plaintiffs' homes require State Licensure.

263. Defendants have indicated they will enforce the amended statute against Plaintiffs' homes.

264. The amended UCA § 62A-2-101 *et seq.* will predictably cause a discriminatory effect on Plaintiffs.

 265. For the above-mentioned reasons, Plaintiffs seek injunctive relief.

**COUNT VII**
**HIPAA VIOLATION**

266. Plaintiffs re-allege and incorporate herein by reference all preceding paragraphs as if fully set forth herein.

267. During Defendants' searches of the sober living homes described above, Defendants took pictures of the exterior and interior of the sober living homes. Defendants also took pictures of the sober living home residents' bedrooms and bathrooms. Defendants made the pictures public record, accessible to anyone, and unconscionably exposed the Plaintiffs' identities, private information, and health information.

268. Defendants admittedly solicited the sober living home residents' neighbors for information about the sober living homes' residents by going door-to-door, willfully disclosing the Plaintiffs' identity, health information, and disability status.

269. Defendants violated HIPAA and seek damages.

**RELIEF SOUGHT AS TO ALL ACCOUNTS**

**WHEREFORE**, Plaintiffs pray for relief as follows:

1.	Enter a declaratory judgment that UCA 62A-2-101 *et seq.* is facially invalid under, and therefore, preempted by the FHA, ADA, and the Federal Anti-Drug Abuse Act and Federal Mandates under said Acts including:

a.	Title 42 Chapter 126 Sec. 12101(a)(5). Congressional findings specifically include that overprotective rules and policies is a discriminatory practice prohibited by the ADA.

b.	Title 42 Chapter 126 Sec. 12101(a)(8) declares "the Nation's proper goals regarding individuals with disabilities are to assure equality . . independent living, and economic self-sufficiency."

2.	Enter a temporary restraining order and/or preliminary and permanent injunction enjoining Defendants and all persons in active concert or participating with any of them, from interfering with the operating of the residences as homes for recovering alcoholics and substance abusers, and/or from interfering in any way with the rights of the Plaintiffs to reside in recovery house or sober living premises, pursuant to Sec. 12188 of the ADA.

3.	Enter findings that the State of Utah has established a pattern of practice for having more than one discriminatory practice, and for their repeated violations of the FHA and ADA.

4.	Enter findings that the new proposed changes to the "recovery residence" under the present HB 259 definition changes do not change the fact that said law is still unlawful and unconstitutional.

5.	Award compensatory damages;

6.     Grant an award of reasonable costs and attorney fees in accordance to Sec. 12205

of the ADA, FHA, and 42 U.S.C. Section 1983; and

7.     Order other such relief as the Court deems just and proper.

**PLAINTIFF HEREBY DEMANDS A JURY TRIAL**

DATED this ___5th___ day of ~~April~~ May, 2016.

**VIAL FOTHERINGHAM LLP**

_____

Edward W. McBride, Jr.
*Attorney for Plaintiff*

DATED this _5th_ day of ~~April~~ May, 2016.

_____

Allen Andersen, Plaintiff

| STATE OF UTAH | ) | |
|---|---|---|
| | : ss | |
| COUNTY OF SALT LAKE | ) | |

Subscribed, sworn to and acknowledge before me by Allen Andersen this _5th_ day of ~~April~~ May, 2016.

_____

NOTARY PUBLIC

ALANNA WARNICK
Notary Public State of Utah
My Commission Expires on:
November 4, 2018
Comm. Number: 679582